OPINION OF THE COURT
John P. Collins, J.
This case has been on trial since September 1986 — over eight months. Originally there were 11 defendants, now 10 remain. Over 40 witnesses have been called in this case. Over 900 exhibits have been received in evidence.
The Constitution of the State of New York requires a common-law jury of 12 veniremen. Twelve jurors were initially selected in this case. Both sides found them to be fair and impartial. In accord with statutory law, CPL 270.30, the court in its discretion may direct the selection of one or more —but not more than four — additional jurors, known as alternate jurors. The court did that in this case. Four alternate jurors were selected. Both sides found them to be fair and impartial. Alternate veniremen were selected after painstaking effort on the part of counsel, the District Attorney, and the court. The voir dire examination can be found in the trial record. CPL 270.30 provides that alternate jurors have the same qualifications, be subject to the same examination and challenges for cause and take the same oath as regular jurors. The Court of Appeals in People v Mitchell (266 NY 15) upheld the selection of alternate jurors.
In January of 1987, both sides consented to the removal of a sworn juror and substitution of an alternate juror. The statutes of this State permitted this. CPL 270.35 provides, in pertinent part, that "[i]f at any time after the trial jury has been sworn and before rendition of its verdict, a juror is unable to continue serving by reason of illness or other incapacity, or for any other reason is unavailable for continued service * * * the court must discharge such juror. If an alternate juror or jurors is available for service, the court must order that the discharged juror be replaced by the alternate juror whose name was first drawn and called”.
On May 20th, I removed one of the sworn jurors, finding her *49 grossly unqualified to serve as a juror. There the court acted pursuant to statute, CPL 270.35, which provides, in pertinent part, that if at any time after a jury has been sworn and before the rendition of its verdict, the court finds that a juror is grossly unqualified to serve in the case, the court must discharge the juror.
There are three alternate jurors available in this case. May the court substitute one for the dismissed juror, and under what circumstances?
Prior to 1952, section 358-a of the Code of Criminal Procedure, the predecessor of the Criminal Procedure Law, provided that alternate jurors be dismissed after a case was submitted for deliberations.
After a lengthy trial in New York County in the 1950’s a case of a few weeks duration — a mistrial was declared when a juror was forced to withdraw. As a result section 358-a of the Code of Criminal Procedure was amended to provide: "After final submission of a case, the court may discharge the alternate jurors, or if the court deem it advisable he may direct that one or more of the alternate jurors be kept in the custody of the sheriff or one or more court officers, separate and apart from the regular jurors until the jury have agreed upon a verdict. If after the final submission of the case and before the jury have agreed upon a verdict, a juror die or become ill, or for any other reason he be unable to perform his duty, the court may order him to be discharged and draw the name of an alternate, who shall then take the place of the discharged juror in the jury room and the jury shall then renew its deliberations with the alternate juror, who shall be subject to the same rules and regulations as though he had been selected as one of the original jurors.”
If this were the statute today, the court — absent the defendant’s consent — would simply direct that the next alternate juror be selected to replace our dismissed juror. In 1966, however, Judge Keating, in People v Ryan (19 NY2d 100) — a case of first impression — had occasion to lead the Court of Appeals in a review of such substitution. The State of California, he noted, permitted such substitution. The Trial Judge in Ryan permitted substitution with the consent of counsel. The defendant’s consent was not obtained.
Judge Keating held that the constitutional guarantee of a common-law jury of 12, a right guaranteed by the Constitution of the State of New York, was violated by such substitution. *50 In great part, the Court of Appeals relied on the rule of practice then prevailing in the Federal court, Federal Rules of Criminal Procedure rule 24. Rule 24, on its face, provides that there be no substitution of alternates after deliberations commence and requires the discharge of alternates at the time the jury begins deliberation.
Today, this court notes that the Federal practice is unlike that in 1966. It is not violative of the United States Constitution to substitute an alternate juror — absent a defendant’s consent — after submission of the case for deliberation. The linchpin of the 1966 Ryan ruling thus no longer exists.
In United States v Hillard (701 F2d 1052 [2d Cir 1983], cert den 461 US 958), Chief Judge Feinberg describes the procedure followed by Judge Lasker in the District Court when, without a defendant’s consent, an alternate juror was substituted during deliberations, in what would appear to be a violation of Federal Rules of Criminal Procedure, rule 24 (c). The jury there had been deliberating 2 Vi days, after a 3-day recess, before the alternate was substituted. In part, the appellant, Hillard, based his argument for reversal on the New York Court of Appeals decision in Ryan (19 NY2d 100, supra). The Federal Court of Appeals found no violation of the United States Constitution by reason of Judge Lasker’s action. It specifically rejected the argument that a subsequent verdict would have been rendered by a 13-man jury.
The Federal courts have long recognized that in a protracted, complex case, such juror substitution could take place where thorough precautions are taken to insure that a defendant’s rights are not prejudiced.
When New York State adopted the Criminal Procedure Law, efforts were made to comply with the Ryan decision. CPL 270.35 provides that, if a trial jury has begun deliberations, a defendant must consent to replacement of a trial juror by an alternate, and that such consent must be in writing, signed by the defendant in open court, in the presence of the court.
However, CPL 270.35 and 270.30, read together, are ambiguous. By reason of CPL 270.30, the court cannot discharge alternate jurors after the jury has retired to deliberate unless, "with the consent of the defendant and the people”. Both sides not having consented to the discharge of the three alternate jurors, they are still available in this case.
CPL 270.35 provides that, if a court finds a juror to be grossly unqualified, as in the instant case, the juror is dis *51 charged. This latter section, however, makes no mention of the declaration of a mistrial, except where no alternate juror is available, which is not our situation. It is of interest that some defendants in the instant case, while refusing to consent to substitution of a juror, have specifically opposed the granting of a mistrial.
The court is unable to discharge the alternates, not having the consent of both sides. Having discharged a juror and an alternate being available, the court, it would seem cannot grant a mistrial. This is one side of the dilemma. The other side is that the statute requires written consent of the defendant to substitute, a consent not forthcoming.
How should the court resolve the dilemma? No mistrial can be declared, but no juror can be substituted without written consent.
True, in People v Barnes (58 AD2d 608 [1977]), the Appellate Division, Second Department, in reversing a Judge who substituted an alternate juror over defense objection — stated in a short memorandum decision: "In our opinion the substitution (without appellant’s consent and over his objection) of an alternate juror after deliberations had commenced was prejudicial error.” The language is interesting because it speaks of no constitutional violation. Additionally, it is unclear that the statutory ambiguity described by this court was ever raised in the Barnes case.
This court also notes that, if it declares a mistrial in circumstances not permitted, jeopardy may attach. This is a particularly serious consideration in the case of certain defendants who are not requesting a mistrial. To grant a mistrial would hardly be a proper course of action in light of the circumstances of this case.
What the court perceives to be a conflict or ambiguity in the statutes must be resolved by considering the possibility of seating the alternate juror.
Certainly such a procedure does not violate the strictures of the United States Constitution, for similar procedures are regularly followed in courts of the Second Circuit.
In the instant case, the jury was deliberating for five hours or less, with time for meals excluded. From the jury notes, it is evident that the jury had just begun to collect items of evidence for review. After 8Vz months, it had barely begun to deliberate.
Three alternate jurors remain. Both sides found them to be *52 fair and impartial. Surely, CPL 270.30 has some meaning when it says they are to be discharged only with the consent of both sides.
Surely, there must be some purpose in retaining the alternates.
Surely, the statute must have some meaning when it says a mistrial is to be declared only when no alternate juror is available.
The court is satisfied that in light of the circumstances of this case, and the short period of deliberation so far, and the precautions that the court intends to follow, that only 12 jurors will render a verdict in this case, and no violation of the State Constitution has occurred.
The court intends to inquire of the alternate juror as follows: "Have you followed all of the court’s instructions so far, regarding newspapers, television and radio? Have you discussed the case with anyone since you were selected as an alternate in this case? If you are selected to replace a juror could you be fair and impartial?” If satisfactory answers are obtained, the alternate juror will be seated and the jury will be instructed as follows: "Juror number 4 has been excused for legal cause and has been replaced with an alternate juror. You must not speculate upon or consider for any purpose the reason for such a substitution. The delay was the fault of no one. The People and the defendants have a right to a verdict reached only after full participation in your deliberations of all 12 jurors who must ultimately report their verdict. That right will only be assured in this case if the jury now commences its deliberations from the beginning. You are, therefore, instructed to set aside and disregard all earlier deliberation and begin deliberating anew. This requires each of the remaining original jurors to set aside and disregard all earlier deliberations, as if such deliberations had not taken place. Are you willing to abide by those instructions?”
If the veniremen answer affirmatively and satisfactorily, deliberations will continue, but only after these additional instructions.
The jury will be informed that all prior jury notes are withdrawn. All exhibits sent to the jury will be removed. Deliberations will begin anew. Any exhibit that the jury now wishes to receive will have to be obtained by means of a new note.
In the circumstances of this case, the court finds no viola *53 tion of the common-law 12-man jury constitutionally mandated, no verdict having been rendered, and deliberations yet having been minimal at most. The trial will proceed. Assuming the questions are answered satisfactorily, deliberations will continue.