Caldwell v New York City Tr. Auth. (2021 NY Slip Op 07537)





Caldwell v New York City Tr. Auth.


2021 NY Slip Op 07537


Decided on December 29, 2021


Appellate Division, Second Department


Barros, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 29, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

CHERYL E. CHAMBERS, J.P.
ROBERT J. MILLER
BETSY BARROS
ANGELA G. IANNACCI, JJ.


2019-04372
 (Index No. 10012/14)

[*1]Shana Caldwell, respondent, 
v
New York City Transit Authority, et al., appellants.



APPEAL by the defendants, in an action to recover damages for personal injuries, from a judgment of the Supreme Court (Loren Baily-Schiffman, J.), entered March 8, 2019, in Kings County. The judgment, upon a jury verdict, and upon an order of the same court dated October 23, 2018, denying that branch of the defendants' motion which was pursuant to CPLR 4404(a) to set aside the jury verdict, is in favor of the plaintiff and against the defendants in the principal sum of $14,705,000.



Anna J. Ervolina, Brooklyn, NY (Timothy J. O'Shaughnessy of counsel), for appellants.
Subin Associates, LLP, New York, NY (Herbert Subin and Pollack, Pollack, Isaac & DeCicco, LLP [Brian J. Isaac], of counsel), for respondent.



BARROS, J.


OPINION & ORDER
I.
On this appeal, we address whether the 2013 amendments to CPLR 4106, which changed the statute to allow trial courts to substitute a regular juror with an alternate juror even after deliberations have begun, may be reconciled with the constitutional right to a trial by a six-member jury wherein each juror deliberates on all issues (see NY Const, art I, § 2; Sharrow v Dick Corp., 86 NY2d 54; Arizmendi v City of New York, 56 NY2d 753; Schabe v Hampton Bays Union Free School Dist., 103 AD2d 418, 427-428). We hold that to reconcile CPLR 4106 with the constitutional and statutory requirements for a civil jury verdict, the trial court must, upon substituting an alternate juror in place of a regular juror after deliberations have begun, provide an instruction to the jury directing them, inter alia, to restart their deliberations from the beginning with the substituted juror and disregard and set aside all prior deliberations. Under the circumstances of this case, the Supreme Court's failure to give that instruction resulted in an invalid verdict which, among other things, deprived the defendants of their request to poll each of the jurors whose votes were counted as part of the verdict (see Duffy v Vogel, 12 NY3d 169), and their right to "a process in which each juror deliberates on all issues and attempts to influence with his or her individual judgment and persuasion the reasoning of the other five" (Sharrow v Dick Corp., 86 NY2d at 60).
II.
On July 12, 2013, the plaintiff allegedly sustained personal injuries as result of a collision between a vehicle, in which she was a passenger, and a bus owned by the defendant New York City Transit Authority and operated by the defendant Theo F. Fraser III. During the liability portion of the trial, the jury was polled and found the defendants entirely at fault in the happening of the accident.
During the damages portion of the trial, the jury was to decide whether, as a result of the accident, the plaintiff sustained a "serious injury" within the meaning of Insurance Law § 5102(d), and, if so, the amount of monetary damages to which the plaintiff would be entitled. As the jury began its deliberations, counsel and the Supreme Court discussed whether to discharge the two alternate jurors. A court officer informed the court that juror number 6 had to attend a class at 2:00 p.m.
Plaintiff's counsel argued that CPLR 4106 permits the substitution of a regular juror with an alternate juror even after deliberations have begun. The Supreme Court agreed, but pointed out that, "[i]f, in fact, we need one or more of the alternates, they have to start deliberations all over again." Plaintiff's counsel disagreed, and argued that CPLR 4106 does not require the jury to commence deliberations from the beginning. The court then asked, "How would that work? They have been talking, say, for three hours, and then somebody new comes in?" Plaintiff's counsel argued that CPLR 4106 "doesn't require any other procedure." The court, with consent of counsel, decided to retain the alternate jurors in the event that a regular juror could not continue deliberating. Soon after that colloquy, the jury sent two notes requesting, inter alia, evidence. The first note, among other things, asked for medical bills, and a second note requested a readback of certain testimony. Given that it was not possible for the readback to be completed before the jury's 1:00 p.m. lunch break, the Supreme Court decided that it would send the jury to lunch prior to the readback and have the jury return at 2:15 p.m. The court informed counsel that juror number 6 "has something that he needs to go to today" at 2:00 p.m. The court suggested replacing juror number 6 with the first designated alternate, and asked whether counsel had any objections to the substitution. Plaintiff's counsel immediately consented to the substitution, but defense counsel wanted to "see where they are" before agreeing to the substitution. The court stated that, given the request for a readback, the jury would not finish by 1:00 p.m. Defense counsel then asked whether they could wait until 1:00 p.m. The court responded, "No, we have to read back the testimony, that's where we are." Defense counsel then stated, "Okay, I understand," indicating his consent to the substitution.
The Supreme Court then stated, "Tell juror number six he can go, and alternate number one goes into the deliberations," and the jury broke for lunch. Upon returning to the courtroom, the court informed the jury, "Before you are seated, juror number six we let go because he had to go to school, so alternate number one is now juror number six." The newly-composed jury then heard the readback of requested testimony, and returned to deliberations.
Shortly thereafter, the jury delivered a note indicating that it had reached its verdict. The Supreme Court then read the verdict into the record. The jury unanimously voted "yes" to the first question, which read, "did the plaintiff, Shana Caldwell, sustain a permanent consequential limitation of use of a body organ or member?" Five jurors voted "yes" and one juror dissented in response to the second question, which read, "did the plaintiff, Shana Caldwell, sustain a significant limitation of use of a body function or system?" Five jurors voted "yes" and one juror dissented in response to the third question, which read, "did the plaintiff, Shana Caldwell, sustain an injury which prevented her from performing substantially all of her customary daily activities for at least 90 of the first 180 days following the accident?"
In response to question four, five jurors voted to award the plaintiff the sum of $4,000,000 for pain and suffering, including loss of enjoyment of life, and $155,000 for medical expenses, with one juror dissenting. In response to question five, five jurors voted to award the plaintiff the sum of $8,750,000 for pain and suffering, including the permanent effect of the injury, from the time of the verdict to the time that the plaintiff could be expected to live, and $1,800,000 for future medical expenses, with one juror dissenting. In response to question six, the jury unanimously indicated that the awards for future pain and suffering and future medical expenses were intended to provide the plaintiff compensation for 48 years.
After reading the verdict, the Supreme Court thanked the jury and was about to discharge the jurors when defense counsel interjected with a request that the jurors be polled. Polling revealed that the announced verdict included the votes of the discharged juror as to questions one through four, and that the substituted juror only voted on questions five and six. As to questions one through four, the substituted juror was "not there."
Defense counsel objected, noting that "[w]e can't poll the juror who wasn't there." The Supreme Court responded, "You have the names on the verdict sheet, you know who the dissenting juror is, there is only one dissenting juror, okay." As the court polled the jurors, it [*2]commented, "you got through more than I thought you got through before we lost the juror."
Immediately after polling the jurors, the Supreme Court discharged the jury. Once the jurors left the courtroom, the court asked counsel whether there was "anything to put on the record." Citing to Duffy v Vogel (12 NY3d 169), defense counsel contended, inter alia, that "because of the absence of the original juror number six, the verdict is incomplete and the jury cannot properly be polled." The court responded that the defendants "didn't object to what we did, replacing the juror," and "therefore, I don't care what the caselaw says, your objection, at this point, is out of time, and you waived. End of discussion." The plaintiff argued that the defendants' failure to object to the substitution of the alternate juror in place of the regular juror was a "trick to try and work to invalidate the verdict that was upcoming." The court noted that, "we don't play those games in my courtroom," and ruled that the defendants "waived" their objection.
III.
CPLR 4104 provides that a jury shall be composed of six persons. As authorized by article I, § 2 of the State Constitution, CPLR 4113(a) provides that a verdict may be rendered by not less than five-sixths of the jurors constituting a jury (see Sharrow v Dick Corp., 86 NY2d 54; Gallegos v Elite Model Mgt. Corp., 28 AD3d 50, 54; State of New York v Exxon Corp., 7 AD3d 926; Waldman v Cohen, 125 AD2d 116). "[W]here the parties to a civil case have not agreed to a trial by fewer than six jurors, a valid verdict requires that all six jurors participate in the underlying deliberations" (Sharrow v Dick Corp., 86 NY2d at 59-60). "The parties are entitled to a process in which each juror deliberates on all issues and attempts to influence with his or her individual judgment and persuasion the reasoning of the other five" (id. at 60; see Waldman v Cohen, 125 AD2d 116, 118; Schabe v Hampton Bays Union Free School Dist., 103 AD2d at 427-428).
"In New York, we have long recognized that affording jurors a last opportunity individually to express agreement or disagreement with the reported verdict, is, when requested by a litigant, indispensable to a properly published, and thereby perfected, verdict" (Duffy v Vogel, 12 NY3d at 174). Indeed, a verdict is not deemed perfected until it is pronounced and recorded in open court (see id.; Kitenberg v Gulmatico, 143 AD3d 947, 949), and such verdict may not be properly recorded without a jury poll where one has been sought (see CPLR 4112; Duffy v Vogel, 12 NY3d at 174; Warner v New York Cent. R.R. Co., 52 NY 437, 442). A failure to honor a party's request to poll each of the jurors may never be deemed harmless error (see Duffy v Vogel, 12 NY3d at 175), and mandates reversal and a new trial (see Holstein v Community General Hosp. of Greater Syracuse, 20 NY3d 892, 893; Duffy v Vogel, 12 NY3d at 175; Garcia v Rosario, 192 AD3d 538).
Here, the defendants were deprived of the constitutional and statutory right to a civil jury trial of six persons who deliberate on all matters, and the right to poll each of the jurors whose votes were counted as part of the verdict announced in open court. Contrary to the plaintiff's contention, the defendants preserved these contentions by protesting that the discharged juror could not be polled, and by arguing that the verdict was defective. In any event, even assuming that the defendants' protests were insufficient to preserve all of the arguments raised on appeal, given the fundamental errors committed by the Supreme Court, we would reach the defendants' contentions in the interest of justice (see Martin v City of Cohoes, 37 NY2d 162, 165; Figueroa-Burgos v Bieniewicz, 135 AD3d 810, 812-813; Krigsfeld v Feldman, 115 AD3d 712, 713; Gallagher v Samples, 6 AD3d 659; Decker v Rassaert, 131 AD2d 626).
Contrary to the Supreme Court's determination, the verdict sheet, which identifies the votes of the jurors, is not a substitute for the polling of the jurors. "A verdict sheet is neither a verdict nor a substantive communication from the jury" (People v Boatwright, 297 AD2d 603, 604). More importantly, the main purpose of polling the jury is to give jurors "a last opportunity individually to express agreement or disagreement with the reported verdict" (Duffy v Vogel, 12 NY3d at 174). Here, such purpose was thwarted since the verdict was not the product of the participation and deliberation of each of the jurors who ultimately delivered the verdict (see e.g. Rivas v New York City Tr. Auth., 103 AD3d 414, 415).
By merely consenting to the replacement of a regular juror with an alternate in accordance with CPLR 4106, the defendants did not waive their constitutional and statutory rights to a civil jury of six persons who deliberate on all matters. The plaintiff's waiver argument is premised on its position that CPLR 4106 does not require a court to instruct the jury to restart deliberations from the beginning, and, in effect, contemplates that a substituted juror may continue from wherever the discharged juror left off during deliberations without any instruction from the court. For the following reasons, the plaintiff's interpretation of CPLR 4106, if accepted, would [*3]needlessly render CPLR 4106 unconstitutional, and is therefore without merit.
Former CPLR 4106 authorized the selection of alternate jurors, who were seated with and treated in the same manner as regular jurors "except that after final submission of the case, the court shall discharge the alternate jurors" (emphasis added; see Gallegos v Elite Model Mgt. Corp., 28 AD3d at 54; see also People v Ryan, 19 NY2d 100, 104). Prior to deliberations, there is no material distinction between regular and alternate jurors, and, thus, substitution at that time presents no violation of the right to trial by jury (see People v Jeanty, 94 NY2d 507, 517; People v Ortiz, 92 NY2d 955, 957; Leffler v Feld, 79 AD3d 491, 492; People v Ballard, 51 AD3d 1034). The rationale of former CPLR 4106's prohibition of a substitution after final submission of the case was that "an alternate juror who enters the jury room after deliberation has begun is not fully qualified to render an intelligent verdict, having missed part of the discussion and consideration which makes up the deliberative process" (2d Prelim Rep of Advisory Comm on Prac and Proc 1958 NY Legis Doc No. 13 at 228; see People v Ryan, 19 NY2d at 104; Gallegos v Elite Model Mgt. Corp., 28 AD3d at 55).
In People v Ryan, the Court of Appeals, in discussing former CPLR 4106, held that the New York State Constitution "prohibits the substitution of an alternate juror . . . after the jury has begun its deliberation," since "once the deliberative process has begun, it should not be disturbed by the substitution of one or more jurors who had not taken part in the previous deliberation and who had 'cease[d] to function as' jurors" (People v Ryan, 19 NY2d at 104-105, quoting People v Mitchell, 266 NY 15, 18; see People v Garbutt, 42 AD3d 665).
In Gallegos v Elite Model Mgt. Corp. (28 AD3d at 55), the First Department extended the principles set forth in People v Ryan (19 NY2d 100), to civil jury trials. The First Department held that absent consent, the substitution of a regular juror with an alternate once deliberations have begun violates the parties' State constitutional right to a civil jury trial and invalidates any resulting verdict (see Gallegos v Elite Model Mgt. Corp., 28 AD3d at 55; see also Avila v City of New York, 73 AD3d 444).
In 2013, CPLR 4106 was amended so that a trial court may discharge and replace a regular juror with an alternate even after deliberations have begun, if the regular juror has "become[] unable to perform the duties of a juror" (Garbie v Ahmad, 168 AD3d 687). In determining whether discharge and replacement of a deliberating regular juror is appropriate, "a trial court must, after receiving notice that a juror may not be able to perform his or her duty, make whatever inquiry is reasonably necessary to determine whether the juror should be discharged and replaced with an alternate juror" (Garbie v Ahmad, 168 AD3d at 687). The failure to make such inquiry before replacing a deliberating regular juror with an alternate constitutes reversible error (see Garcia v Rosario, 192 AD3d 538; Garbie v Ahmad, 168 AD3d at 688).[FN1]
By enacting the amendments to CPLR 4106, the Legislature sought to reduce the possibility of a mistrial due to incapacitation of a regular juror during jury deliberations (see Bill Jacket, L 2013, ch 204). The Bill Jacket notes that the former version of the statute required discharge of the alternate jurors after final submission of the case, and that, if a juror became disabled during deliberations, then a mistrial was declared unless all parties consented to a five-person jury, which consent was rarely obtained (see id.).
Notably, the Bill Jacket does not address case law holding that the substitution of an alternate juror after deliberations have commenced, without consent, violates the constitutional right to a civil trial by jury, and invalidates any resulting verdict (see People v Ryan,19 NY2d 100; Avila v City of New York, 73 AD3d 444; Gallegos v Elite Model Mgt. Corp., 28 AD3d at 55). Even so, courts have an obligation to "avoid, if possible, interpreting a presumptively valid statute in a way that will needlessly render it unconstitutional" (Overstock.com, Inc. v New York State Dept. of [*4]Taxation & Fin., 20 NY3d 586, 593 [internal quotation marks omitted]; see LaValle v Hayden, 98 NY2d 155, 161).[FN2]
The plaintiff's construction of CPLR 4106, which is that the statute does not require the jury to restart deliberations from the beginning upon a juror substitution, would render CPLR 4106 unconstitutional because it would deprive the parties of the right to a civil jury trial wherein, among other things, the same jurors deliberate on all issues and render a verdict (see Sharrow v Dick Corp., 86 NY2d at 59-60; Waldman v Cohen, 125 AD2d at 118; Schabe v Hampton Bays Union Free School Dist., 103 AD2d at 427-428). Indeed, the Supreme Court correctly rejected the plaintiff's argument, and determined that, upon substitution, deliberations would have to begin anew. The court, however, inexplicably failed to give the jury any instruction when it substituted juror number 6 with the first designated alternate.
Thus, we hold that to reconcile CPLR 4106 with the constitutional right to a civil jury trial, a trial court permitting, upon adequate inquiry, a substitution of a regular juror with an alternate juror once deliberations have begun, must instruct the jury: (1) that one of its members has been discharged and replaced with an alternate juror as provided by law; (2) that the parties are entitled to a verdict reached only after full participation of the six jurors who will ultimately return the verdict; and (3) in order to assure the parties of that right, the jury must start their deliberations on each issue from the beginning, and must set aside and disregard all past deliberations (see e.g. NJ Model Jury Charge [Civil] 1.16; Judicial Council of California Civil Jury Instruction No. 5014; see also Greisel v Dart Indus. Inc., 23 Cal 3d 578, 591 P2d 503, overruled on other grounds by Privette v Superior Court, 5 Cal 4th 869, 854 P2d 721; cf. People v Hubsher, 176 AD3d 972). Further, where the trial court has provided the jury with a verdict sheet, the court should substitute it with a clean verdict sheet in order to ensure that past deliberations do not infect the new deliberation process.
The Supreme Court's failure to give the jury an instruction, inter alia, to begin deliberations anew resulted in an invalid verdict that included the votes of the discharged juror, and did not include votes of the juror who replaced him. Further, the verdict sheet evinces that on questions two through four, the discharged juror voted with the majority, and there were three different dissenting jurors on those questions. Discounting the votes of the discharged juror on those questions, there were only four votes in favor of the plaintiff. A verdict may not be reached by less than five-sixths of the jurors constituting a jury (see CPLR 4113[a]), and a jury's vote containing less than five votes in favor of a party is tantamount to no verdict (see State of New York v Exxon Corp., 7 AD3d 926; Novo Corp. v Consolidated Edison Co. of N.Y., 53 AD2d 570; Fairchild v Cervi Bros. Trucking Co., 1 AD2d 508).
IV.
In light of our determination, we need not reach the defendants' remaining contentions.
Accordingly, the judgment is reversed, on the law, and the matter is remitted to the Supreme Court, Kings County, for a new trial on the issue of damages.
CHAMBERS, J.P., MILLER and IANNACCI, JJ., concur.
ORDERED that the judgment is reversed, on the law, with costs, and the matter is remitted to the Supreme Court, Kings County, for a new trial on the issue of damages.
ENTER:
Maria T. Fasulo
Clerk of the Court



Footnotes

Footnote 1:The issue of whether the Supreme Court made adequate inquiry as to whether the regular juror's class at 2:00 p.m. rendered him "unable to perform the duties of a juror" is not before us (cf. Garcia v Rosario, 192 AD3d 538 [judgment reversed based upon erroneous discharge of jury foreperson alleged to have been in verbal altercation with another juror]; Garbie v Ahmad, 168 AD3d 687 [judgment reversed based upon court's failure to make adequate inquiry regarding juror's complaint of emotional distress before discharging and replacing such juror]; Jett v City of New York, 140 AD3d 511 [court providently exercised discretion in refusing to discharge juror who "expressed concern about continuing deliberations" in absence of evidence that he was unable to perform duties of a juror]).

Footnote 2:At the request of the Office of Court Administration, legislation has been proposed to amend CPLR 4106 to provide, inter alia, that "[a]fter an alternate juror has been substituted, the jury shall deliberate on all of the issues that were submitted to the jury at the outset of deliberations" (2021 NY Assembly Bill A7799).